## Commonwealth v. Anzulewicz

*Henry J. Crocker*, for Commonwealth.

*Louis Sager*, for defendant.

HONEYMAN, J., April 6, 1967.—Defendant was tried before the undersigned judge of this court and a jury on a bill of indictment containing two counts charging open lewdness and public indecency. The trial commenced October 7, 1966, and at the conclusion thereof on October 10, 1966, the jury rendered a verdict of guilty on both counts of the indictment. Thereafter, motions for a new trial and in arrest of judgment were filed by and on behalf of defendant. These motions were argued before the court en banc and briefs were submitted on December 19, 1966, and the matter is now ready for disposition.

Defendant has as a basis for his motions for a new trial and in arrest of judgment five questions. These questions shall be considered and resolved in the order in which they appear in defendant's brief.

The first two questions will be considered together because of their similarity. They both deal with the question of whether or not a crime could have been committed on the facts presented by the Commonwealth. Defendant places his reliance on the case of Commonwealth v. Helms, 38 D. & C. 2d 496 (1965), order affirmed, 206 Pa. Superior Ct. 743. In the Helms case, defendant interposed a demurrer at the close of the Commonwealth's case which was sustained by the court "because we concluded that the Commonwealth

failed to show that the alleged lewd acts were 'open', 'notorious' or 'public', as required by the statute. . . . ": Id. at 497. Defendant asserts that since the order sustaining the demurrer in the Helms case was affirmed by the Superior Court, we are bound by the rationale of that case.

We do not agree, but to the contrary feel that in affirming the order the Superior Court was merely stating that the lower court acted within the proper framework of its sound discretion and that no manifest abuse of discretion was present when it sustained the demurrer. To buttress this assumption, we have the fact that one of the points relied on by the lower court in sustaining the demurrer was that defendant did not know, or have reason to know, that he was being observed. This is clearly not the law in Pennsylvania, since in Commonwealth v. Falcone, 202 Pa. Superior Ct. 474 (1964), the Superior Court stated in referring to this crime that:

"It will be noted that the above act does not require a deliberate or malicious intent".

Even assuming that the Helms case is binding on this court, we feel that it is clearly distinguishable on its factual situation. The facts upon which the court relied in the Helms case to decide that defendant's acts were not open, notorious or public may be summarized as follows: The act occurred in defendant's trailer in a trailer park which was marked "Private Property" at its entrance; there was no public thoroughfare in proximity to defendant's trailer; the act occurred at 1:30 in the morning; the acts were viewed through a louvered window which was 10 × 28 inches in size; and defendant did not know that he was being observed. The court concluded that:

" . . . the legislative mandate that the lewdness must be 'open', 'notorious' or 'public' is not satisfied with evidence of lewdness committed during hours of

darkness, in a private dwelling, subject to observation only by persons not obligated so to do, looking through windows of their own dwelling into the dwelling of the alleged offender via the latter's windows. The ancient adage that a man's home is his castle must have some sanctity under the law".

In the instant case, the jury believed the facts as presented by the Commonwealth, as is evidenced by their verdict. These facts differed from those in the Helms case in a number of important instances. Defendant was in his home in this case, but his home was not in an area which was considered private, as is a trailer camp. There was a public thoroughfare in close proximity to defendant's home here, even though he was in a rear room with a window on the side. The acts complained of occurred around 9:00 P. M. on three successive evenings, and not in the early morning hours. The window through which defendant was observed was not a small louvered opening in a trailer door, but a full sized window of a house with nothing other than a sheer curtain covering it. This was not a case where defendant attempted to conceal his actions only to be spied on by one not obligated to do so. Here we have a situation where, in the reasonable use of her house, the prosecuting witness and her family could not help but observe defendant's activities. Furthermore, there was evidence from which the jury could have readily inferred that he knew his actions, while in the nude, of waving his private parts would be observed by the female occupants of the house next door.

The Commonwealth presented enough evidence in this case to safely permit the jury to conclude that the acts of defendant were open, notorious and public. There are no appellate court decisions defining these terms, but the legislative intent seems to us to be fairly obvious. The statute which proscribes conduct of the calibre of defendant's actions states:

"Whoever commits open lewdness, or any notorious act of public indecency, tending to debauch the morals or manners of the people, is guilty of a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or undergo imprisonment not exceeding one (1) year, or both". Act of June 24, 1939, P. L. 872, sec. 519, 18 PS §4519.

The words open, notorious and public do not refer to the place where the conduct occurred but to the nature and quality of the act itself. This can be demonstrated by many examples; such as, if one were to masturbate while facing out a window which fronted on a main street, the act would clearly fall within the ambit of the statute, even though he was within the confines of his own home. This is not because his house is a public or open place, but because his act is open, public and notorious. In the present case, defendant engaged in masturbation before a side window. It must be granted that his opportunity to be observed by members of the public is far less than if he were in a front window. Nevertheless, his act was open, notorious and public in nature and quality. Any other construction would lead to uncertainty and ambiguity since it would be difficult to determine just where the line between private and public would be drawn. Therefore, the crime of open lewdness and public indecency can be shown on the facts presented in this case, and the charge by the trial judge on this point was a correct statement of the law of the Commonwealth.

The third question raised by defendant relates to the admission into evidence of a conversation among defendant, his father and the arresting officer. The testimony of the arresting officer was as follows:

"Q. All right, as a result of the conversation you had with Mr. Anzulewicz, senior, what did Mr. Anzulewicz do?

"A. He called James, who was in the bedroom.

James said, 'Wait until I put clothes on.' James came out of the bedroom. I was standing in the parlor, near the bedroom. I introduced myself to James. I said to James, 'Do you know why I am here?' He said, 'Yes, I got caught.' I said, 'James, would you tell your father what happened?' James did.

"Q. What did James say?

"MR. SAGER: If your Honor please, I would like to have a side-bar conference, with your Honor's permission".

At this point, counsel for defendant moved for the withdrawal of a juror and for an offer of proof from the Assistant District Attorney. His motion was refused, and the officer was permitted to continue:

"Q. Now, Officer Leuthold, I think you said or I think you testified as to the substance of the conversation. Was there any further conversation that was between you and the defendant or between the defendant and his father at this point?

"A. Other than he admitted to his father what he had done, and his father shouldn't worry, he was guilty of it.

"Q. Are these the words that he said?

"A. Yes, sir. He said he knew he would get caught. I then advised James that he was under arrest. In the presence of his dad I told James that he was under arrest, that he could remain silent, he could also seek legal counsel, he didn't have to ask (sic) any questions that the police answered (sic) him. I then took James to the Borough Hall".

Defendant contends that the introduction of these admissions into evidence violated the procedural safeguards effected by the Constitution of the United States to secure the privilege against self-incrimination. These safeguards have recently been explained in Miranda v. Arizona, 384 U. S. 436 (1966). The crux of Miranda is that:

" . . . the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way": Id. at page 444.

The facts demonstrate that defendant in the present case was in his own home and in the presence of his father. There is nothing to indicate that he was in custody and that he had been deprived of his freedom of action in any significant way; nor that his statements to the officer and his father were lacking in spontaneity or voluntariness. For these reasons, defendant's motion for the withdrawal of a juror was properly refused. See Commonwealth v. Eperjesi, 423 Pa. 455 (1966).

The next contention of defendant is that the prosecuting attorney severely prejudiced defendant by two remarks he made during his closing speech to the jury. First of all, the record indicates that defendant's attorney moved for the withdrawal of a juror:

". . . on the ground that Mr. Crocker has said what other juries or jurors have done in cases similar to this case, and I think that is prejudicial and that is not a fact".

The trial judge refused the motion and stated:

". . . I remind the jury, of course, that they take the law from me. You take the law that is applicable in this case exclusively from me, and again I say what has happened in any other case is of no consequence. We are concerned only with the issues in this particular case".

In light of this statement by the trial judge and his subsequent charge, we feel that any error was suffi-

ciently cured as to prevent its being prejudicial to defendant.

The other statement made by the prosecuting attorney to which defendant's attorney objected arose in the following manner:

"MR. SAGER: I feel that when my learned opponent, in the light of all the other things that he stated that I objected to on the record, ends up—he is toward the end, I assume—by stating, 'He has only one year. If he had a prior record it wouldn't be admissable,' because he is inferring that he has a prior record, and I challenge him to produce it.

"MR. CROCKER: I never said he had a prior record.

"MR. SAGER: That is the inference. That is the inference that he is asking twelve people to draw. This young man, I repeat, has no prior record. If he has any prior record, let Mr. Crocker produce it, not to infer to the jury that he may have one and if he did we couldn't consider it.

"THE COURT: Did you intend to create such an inference?

"MR. CROCKER: No, your Honor. I am explaining here to the jury—.

"MR. SAGER: That is what you did.

"MR. CROCKER: (Continuing)—that for the purposes of the law he has one year of adulthood.

"THE COURT: If he did not intend to create such an inference, then the jury can safely conclude that this young man, this defendant, has no previous criminal record of any sort.

"MR. SAGER: The reason that I object, your Honor, is not—

"THE COURT: And your motion for the withdrawal of a juror is refused".

It is clear that defendant's attorney himself cured any prejudice which may have resulted from this

statement, and the prosecuting attorney admitted that he was not inferring that defendant had a previous record. We do not feel that this misunderstanding between counsel amounts to prejudicial error.

The last point raised by defendant is that the trial judge erred in allowing one of the Commonwealth's witnesses to describe the type of gestures defendant was making as being "lewd". We do not see how defendant can seriously contend that any error was committed here, since his attorney withdrew his objection after the trial judge stated that he believed the word lewd to be an adjective rather than a conclusion of law.

### ORDER

And now, April 6, 1967, defendant's motions for new trial and in arrest of judgment are refused and defendant is ordered to appear at 9:30 A.M. on Friday, April 21, 1967, in courtroom "C" to receive the sentence of the court.